UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE


Sprague Operating Resources LLC,
    Plaintiff

    v.                                  Case No. 20-cv-323-SM
                                        Opinion No. 2020 DNH 122

Star Energy Transportation, Inc.
And Federated Mutual Insurance Co.,
    Defendants


**O R D E R**


Sprague Operating Resources brings this diversity action seeking a declaratory judgment, damages for breach of contract, and contribution under New York Navigation Law for costs it incurred remediating a fuel spill in New York.  Star Energy Transportation moves the court to change venue to the Eastern District of New York.  The other defendant, Federated Mutual Insurance, moves the court to dismiss all claims against it on grounds that the court lacks personal jurisdiction.  In the alternative, Federated Mutual also seeks a change of venue to the Eastern District of New York.

For the reasons discussed, Star Energy's motion to change venue is granted and Federated Mutual's motion to dismiss or, in the alternative, to change venue is granted to the extent it

seeks a transfer of venue to the United States District Court for the Eastern District of New York, where venue is plainly proper.  See 28 U.S.C. § 1391(b).

**Background**

Accepting the allegations in Sprague's complaint as true, the relevant facts are as follows.  Sprague is an independent supplier of fuel and natural gas.  It asserts that it is a New Hampshire corporation, with a principal place of business in Portsmouth, New Hampshire (though in the "Transportation and Delivery Agreement" between Sprague and Star Energy, Sprague is represented to be a Delaware limited liability company.  See Document no. 1-1 at 2).  Star Energy is a New York corporation, with its principal place of business on Staten Island, New York.  Federated Mutual is a Minnesota corporation, with its principal place of business in Owatonna, Minnesota.

In 2012, Sprague and Star Energy executed a "Transportation and Delivery Agreement," pursuant to which Star Energy agreed to deliver fuel products on behalf of Sprague.  Three provisions of that contract are particularly relevant to the parties' current dispute:

> **Indemnification.**  Section 6 of the agreement provides that Star Energy shall indemnify Sprague for any loss

>or damage suffered on account of any fuel spillage caused by Star Energy.
>
>**Clean-up Costs.**  Section 8 of the agreement provides that, in case of a fuel spill caused by Star Energy, it shall be responsible for all clean-up costs and remediation activities.  Should Star Energy fail to respond appropriately to any spill, Sprague may perform any clean-up and remediation at Star Energy's expense.
>
>**Insurance.**  Section 13 of the agreement provides that Star Energy shall maintain specified limits of insurance coverage and shall insure that Sprague is named as an additional insured on all such policies.

<u>See</u> Transportation and Delivery Agreement (document no. 1-1). Pursuant to the terms of that agreement, Star Energy obtained an insurance policy from Federated Mutual, naming Sprague as an additional insured.  <u>See</u> Additional Insured Endorsement (document no. 1-2) at 8.

On May 23, 2018, while making a delivery of approximately 3,000 gallons of diesel fuel on behalf of Sprague to the Port Authority of New York and New Jersey, Star Energy's delivery driver is alleged to have negligently over-filled an underground storage tank at LaGuardia Airport.  According to Sprague, that conduct caused a portion of the tank to be blown off, resulting in the spillage of approximately four gallons of diesel fuel. It also irreparably damaged the underground storage tank.  Star Energy (and Federated Mutual) deny that Star Energy's employee

3

was responsible for either the spill or the damage to the tank and, therefore, deny that Star Energy (or its insurer) is responsible for remediation under New York law.

The New York State Department of Environmental Conservation was notified of the spill and, after investigation, determined that the underground tank had been rendered unsafe and unusable. Invoking New York law, the Port Authority demanded that Sprague replace the storage tank and remediate the spill. Sprague did so, at significant cost.

Sprague alleges that it timely notified Star Energy and Federated Mutual of both the spill and its remediation efforts. In response, says Sprague, Federated Mutual denied coverage. According to Sprague, Federated Mutual claims that the policy provides Sprague with third-party liability coverage only when Sprague is named as a defendant in a lawsuit – not when, as here, Sprague "voluntarily" complied with the State of New York's order to replace the storage tank and remediate the spill. Federated Mutual also says its expert conducted an investigation of the circumstances surrounding the accident, examined the underground storage tank, and concluded Star Energy did not cause the damage at issue in this case – thus, coverage under the policy was not implicated.

4

To date, says Sprague, neither Star Energy nor Federated Mutual has honored its contractual obligations to reimburse Sprague for costs it incurred as a result of Star Energy's (allegedly) negligent over-filling of the storage tank and the resulting fuel spill and damage to the storage tank. As of March, 2020, Sprague says those costs were in excess of $558,000, and they continue to grow.

## Discussion

Star Energy and Federated move the court to change venue, invoking the provisions of 28 U.S.C. § 1404. Sprague objects, pointing out that venue is proper in this district, and relying heavily upon what it calls a "mandatory" forum selection clause in its agreement with Star Energy.[1]

---

[1] Because the court has concluded that a change of venue is appropriate, it need not resolve Federated Mutual's motion to dismiss for lack of personal jurisdiction. See generally Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979) ("when there is a sound prudential justification for doing so, we conclude that a court may reverse the normal order of considering personal jurisdiction and venue."). See also HIL Tech., Inc. v. Eng'g/Remediation Res. Grp., Inc., No. 2:18-CV-78-DBH, 2018 WL 2210428, at *3, n.5 (D. Me. May 14, 2018) (discussing this issue at length).

I.   <u>Venue and Section 1404(a)</u>.

Pursuant to 28 U.S.C. § 1404(a), the court may, in its discretion, transfer any civil action to another district in which it might have been brought, "for the convenience of the parties and witnesses, in the interest of justice." <u>See also</u> 28 U.S.C. § 1631 (authorizing the court to transfer any action over which it lacks jurisdiction – likely applicable to the claims advanced against Federated Mutual). While similar to the common law doctrine of <u>forum non conveniens</u>, transfer of venue under section 1404(a) is more lenient and permissive, vesting the district courts with greater discretion. So, for example, the Supreme Court has observed the following:

> When Congress adopted § 1404(a), it intended to do more than just codify the existing law on forum non conveniens. As this Court said in <u>Ex parte Collett</u>, 337 U.S. at 55—61, Congress, in writing § 1404(a), which was an entirely new section, was revising as well as codifying. The harshest result of the application of the old doctrine of forum non conveniens, dismissal of the action, was eliminated by the provision in § 1404(a) for transfer. When the harshest part of the doctrine is excised by statute, it can hardly be called mere codification. As a consequence, we believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.

Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955). See also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981) ("District courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of forum non conveniens.").

More recently, the Court of Appeals for the First Circuit has recognized that "[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). When a district court considers a discretionary motion to transfer venue, "[n]ot only does the burden of proof rest with the party seeking to transfer; there is a 'strong presumption in favor of the plaintiff's choice of forum.'" Id. at 13 (quoting Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000)).

As this court has observed, the courts, "drawing heavily on concepts from § 1404(a)'s predecessor doctrine, forum non conveniens, have broken down the statute's three enumerated grounds for transfer - convenience to parties, convenience to witnesses, and the interest of justice - into "private-interest"

7

and "public-interest" factors.  Jackson Nat. Life Ins. Co. v. Economou, 557 F. Supp. 2d 216, 220 (D.N.H. 2008).  The private-interest factors are:

> the plaintiff's choice of forum; location of the operative events in the case; convenience of the parties; the convenience of the witnesses; cost of obtaining witnesses; location of counsel; ability to compel attendance of witnesses; accessibility and location of sources of proof; possibility of a jury view; and the existence of a contractual forum selection clause.

Id. (citations omitted).  The public-interest factors include: "administrative difficulties caused by court congestion; local interest in the controversy and the burden of jury duty; and the proposed forum's familiarity with the governing law."  Id. at 223.  See also Adam v. Hawaii Prop. Ins. Ass'n, No. CIV. 04-342-SM, 2005 WL 643358, at *2-4 (D.N.H. Mar. 21, 2005) (discussing in detail change of venue under § 1404(a), its relationship to forum non conveniens, and the relevant factors to be considered).

II.  Transfer of this Proceeding is Warranted.

Bearing in mind that Sprague does not bear the burden of proof, it is still probably appropriate to begin with a discussion of the basis for Sprague's objection to transferring venue.  If its arguments were correct, the burden on defendants

8

to demonstrate that transfer is warranted would be significantly higher.

The core of Sprague's argument (at least as it relates to Star Energy) is that Star Energy signed a mandatory forum selection clause, consenting to the exclusive jurisdiction of, and venue in, New Hampshire's courts. See Plaintiff's Opposition Memorandum (document no. 21) ("The forum selection clause at issue here mandates jurisdiction and venue in this Court."). The weakness in Sprague's argument is that the contractual provision upon which it relies is not mandatory. It is permissive. It provides, in its entirety, as follows:

> **Governing Law.** This Agreement shall be governed by and interpreted in accordance with the laws of the State of New Hampshire, excluding its conflicts and [sic] law of principles. <u>The parties consent to the jurisdiction of the New Hampshire courts to resolve any disputes under this Agreement</u> and hereby waive any right to a jury trial.

Transportation and Delivery Agreement (document no. 1-1) at 10, section 17 (emphasis supplied).

This court has previously discussed, at length, the distinction between mandatory and permissive forum selection clauses. See Arguss Commc'ns Grp., Inc. v. Teletron, Inc., No. 99-CV-257-JD, 2000 WL 36936, at *6-9 (D.N.H. Nov. 19, 1999).

9

See also RT Consulting LLC v. Kentucky Bankers Ass'n, No. 15-CV-132-PB, 2016 WL 780118, at *3 (D.N.H. Feb. 26, 2016). That discussion need not be repeated. It is sufficient to note that, when interpreting forum selection clauses, courts typically construe ambiguous provisions against the drafter (here, Sprague). Additionally, "for a forum selection clause to be mandatory, the clause must clearly display the intent of the contracting parties to choose a particular forum to the exclusion of all other fora. Despite containing forceful words like 'shall,' the clause will not be deemed mandatory unless it is clear that the clause mandates the exclusive use of a particular forum." Arguss Commc'ns Grp., at *7 (citations omitted) (emphasis supplied). See also Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 17 (1st Cir. 2009) ("mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum.") (emphasis supplied).

Permissive forum selection clauses of the sort at issue here are often referred to as "consent to jurisdiction clauses," and they "authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere." Id. Indeed, the parties' agreement uses precisely that language, expressing their joint "consent to the jurisdiction" of New Hampshire

10

courts.  That is not the language of a mandatory forum selection clause.  See generally Redondo Const. Corp. v. Banco Exterior de Espana, S.A., 11 F.3d 3, 5-6 (1st Cir. 1993) ("The agreement provided that the 'Borrower and the Guarantors each hereby expressly submits to the jurisdiction of all Federal and State courts located in the State of Florida.'  Defendant argues that this clause prohibits plaintiff from suing in the District of Puerto Rico.  This is a confusion.  Affirmatively conferring Florida jurisdiction by consent does not negatively exclude any other proper jurisdiction.") (emphasis supplied).

    Little more need be said.  The forum selection clause at issue is plainly permissive, rather than mandatory.  In short, that means the court must consider both the private-interest and public-interest factors identified above in resolving defendants' motions motion to change venue.  Compare BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin., 884 F.3d 463, 472 (4th Cir. 2018) (holding that when a forum selection clause is merely permissive, the traditional forum non conveniens analysis applies, and the reviewing court considers both the public and private interests involved) with Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 64 (2013) (interpreting a mandatory forum selection clause and holding

that a court considering a motion to transfer venue "should not consider arguments about the parties' private interests.") (emphasis supplied).[2]

So, having resolved that the parties' forum selection clause is a permissive one, the court next considers whether defendants have carried their burden of demonstrating that the public and private interests at stake warrant transferring this case to the United States District Court for the Eastern District of New York. Prior to doing so, however, the court notes the following: before either defendant arguably has any duty to indemnify Sprague for costs incurred in remediating the spill (either contractually or under New York law), it must first be determined who was responsible for that spill and damage to the storage tank. That issue is very much disputed,

---

[2] Sprague contends that the analysis set forth in Atlantic Marine applies even if the parties' forum selection clause is permissive, rather than mandatory. That is an overly-broad and incorrect reading of Atlantic Marine, which the court rejects. See, e.g., BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin., 884 F.3d 463, 471-72 (4th Cir. 2018) ("Although the Atlantic Marine Court did not expressly hold that only a mandatory forum selection clause modifies the forum non conveniens framework, the Court's rationale makes clear that this is so. . . Because the clause here is permissive, the modified framework outlined in Atlantic Marine does not apply, there is no presumption in favor of enforceability, and we proceed with a traditional forum non conveniens analysis.") (collecting cases).

as Star Energy – with support from Federated Mutual's expert's report - denies that its driver was responsible for the spill or caused the damage to the storage tank.  Thus, liability in this case is unresolved and turns, at least in substantial measure, on application of New York Navigation Law.  Indeed, Sprague implicitly acknowledges as much in its complaint, when it asserts that:

> Star [Energy] is a responsible party under New York Navigation Law and has breached its duty under the Navigation Law by intentionally or unintentionally discharging petroleum and failing to contain such discharge immediately, as required under New York Navigation Law, Article 12 § 176.
>
> * * *
>
> Sprague is entitled to contribution under New York Navigation Law, Article 12, § 176(8) from Star [Energy] for all losses incurred by Sprague for the cleanup and removal of the discharge of petroleum that resulted from Star's acts or omissions.

Complaint, at para. 63 and 65.  Consequently, the court focuses on that claim in considering whether a change of venue to the Eastern District of New York is appropriate.

    A.   The Parties' Private Interests.

Two of the relevant factors plainly counsel in favor of the court retaining jurisdiction over this case and declining to transfer it to the Eastern District of New York: plaintiff's

13

choice of this forum and the existence of the forum selection clause in which Star Energy consents to this court's jurisdiction.  Balanced against the remaining factors, however, those are not sufficiently compelling to warrant keeping this case in New Hampshire.

Of significant weight is the convenience of witnesses. See, e.g., Buckley v. McGraw-Hill, Inc., 762 F. Supp. 430, 440 (D.N.H. 1991) ("The most important factor in deciding whether to transfer an action is the convenience of witnesses"); U.S. ex rel. Ondis v. City of Woonsocket, Rhode Island, 480 F. Supp. 2d 434, 437 (D. Mass. 2007) ("The convenience of the witnesses is probably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C.A. § 1404(a).") (citations and internal punctuation omitted).  See also Slattery v. Walt Disney World Co., No. CIV. 03-267-M, 2003 WL 22888860, at *5 (D.N.H. Dec. 8, 2003).  When analyzing this factor, "the court is ordinarily concerned with the location of witnesses who are not parties or employees of the parties."  Pierce v. Biogen U.S. Corp., No. 18-12521-DJC, 2019 WL 2107278 (D. Mass. May 14, 2019) (citations and internal punctuation omitted).  Related factors are the location of the operative events (New York); the physical location of evidence –

here, an underground storage tank located in New York; and both the ability to compel, and the cost to obtain, witnesses.

In this case, all of those factors counsel strongly in favor of transfer. The spill occurred at LaGuardia Airport and most (if not all) of the relevant fact witnesses likely live in or near New York. The same is true for any employees of the New York State Department of Environmental Conservation and the Port Authority of New York and New Jersey who have been involved in, or have information relevant to, any investigations into the damage to the storage tank. Moreover, compelling uncooperative or unwilling witnesses to testify in New Hampshire could be difficult, since this court's subpoena power is limited to 100 miles (less than half the distance from this court to Brooklyn, New York). See Fed. R. Civ. P. 45. Additionally, the possibility that one or more parties may request a jury view of the accident scene also counsels in favor of transfer.[3]

The remaining factors, including those such as convenience of the parties, play little role in this case, as they are essentially in equipoise or are of little weight. As an aside,

---

[3] In their Transportation and Delivery Agreement, Sprague and Star Energy waived their rights to a jury trial. Nevertheless, it is unclear whether Federated Mutual retains the right to have Sprague's claims against it litigated before a jury.

15

however, to the extent the "location of counsel" factor carries weight in this analysis, see Jackson Nat. Life Ins., 557 F. Supp. 2d at 220, the court notes that Sprague's counsel is located in New York.

B.   The Public Interest Factors.

While certainly less significant than the factors discussed above, the Eastern District's familiarity with New York's Navigation Law weighs in favor of changing venue.  As this court (Laplante, J.) observed in a case involving a requested change of venue to Florida:

> Although this court is capable of construing Florida law and applying it to the evidence presented, and a federal court should not shirk its responsibility to interpret and apply the law of other jurisdictions, this admonition presupposes the obvious: standing alone, a requirement to apply Florida law favors (but does not compel) a transfer to a Florida venue.  There can be little question that the United States District for the Middle District of Florida is better versed in, and in a better position to apply, Florida law.

Jackson Nat. Life Ins., 557 F. Supp. 2d at 223-24.

Also favoring transfer is the local interest in the outcome of this case.  Remediating (and properly allocating costs associated with remediating) a fuel spill at LaGuardia Airport is plainly an issue of substantial concern to citizens of the

16

Eastern District.  Residents of New Hampshire have significantly less interest in the resolution of those issues.

Finally, as noted above, it is unlikely that this court could properly exercise either general or specific jurisdiction over one of the two named defendants: Federated Mutual.  See generally Douglas Co., Inc. v. My Brittany's LLC, No. 19-CV-1234-SM, 2020 WL 2768973 (D.N.H. May 28, 2020).  If the court were to decline to change venue, Sprague's intertwined claims against Star Energy and its insurer, Federated Mutual, would likely have to be litigated in two different forums – a decidedly inefficient approach to resolving the parties' disputes.  That is yet another "compelling reason" in favor of transferring venue to the Eastern District.  See Boston Post Partners II, LLP v. Paskett, No. 15-13804-FDS, 2016 WL 3746474 at *11 (D. Ma. July 8, 2016) (collecting cases).

## Conclusion

Sprague's choice to bring suit in this court, as well as the forum selection clause in its Transportation and Delivery Agreement with Star Energy, both weigh against transferring this proceeding (or, at a minimum, Sprague's claims against Star Energy) to the Eastern District.  But, the fact that the forum selection clause is merely permissive, as well as the fact that

17

it likely does not bind Federated Mutual (which is not a party to the agreement), lessen the significance of those factors.[4]

Moreover, several factors counsel affirmatively in favor of changing venue – some quite strongly. On balance, and considering all of the circumstances unique to this case, the court concludes that defendants have carried their burden of demonstrating that transfer of this action is appropriate.

For the foregoing reasons, as well as those set forth in its memoranda, Star Energy's motion to change venue to the Eastern District of New York (document no. 13) is granted. Similarly, Federated Mutual's motion to dismiss or, in the alternative, to transfer venue (document no. 6) is granted to the extent it seeks a transfer of venue to the Easter District of New York. See 28 U.S.C. §§ 1404 and 1631. In all other respects, that motion is denied.

---

[4] It is conceivable - though most unlikely – that Federated Mutual could be bound by its insured's forum selection agreement. See, e.g., Boston Post Partners, 2016 WL 3746474 at *5 ("A non-party may be bound by a forum-selection clause where that party is closely related to the dispute such that it becomes foreseeable that it will be bound.") (citations and internal punctuation omitted). Sprague, likely recognizing that Federated Mutual cannot be bound by the forum selection clause, does not raise such an argument and, therefore, the court deems it waived and need not address it. But, even if Federated Mutual were bound by the permissive forum selection clause, it would not change the outcome of this order.

The Clerk of Court shall transfer this proceeding to the United States District Court for the Eastern District of New York and close the case on this court's docket.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 13, 2020

cc: counsel of record